J-S69041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CARL HEMPHILL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DAVID M. SIEGEL, DAVID R. GALLAGHER AND SIEGEL & GALLAGHER, LLC | |
| Appellees | No. 866 EDA 2015 |

Appeal from the Order February 17, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2012-004004

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY OLSON, J.:                    **FILED: January 21, 2016**

Appellant, Carl Hemphill, appeals from the order entered on February 17, 2015 granting a motion for summary judgment filed by David M. Siegel, David R. Gallagher, and Siegel & Gallagher, LLC (Siegel & Gallagher) and entering judgment in favor of Siegel & Gallagher on Appellant's five-count complaint[1] against them.  Upon review, we affirm.

The trial court summarized the facts of this case as follows:

> MJC Inc. and/or MJC Labor Solutions, LLC (hereinafter collectively "MJC") provided direct landscaping services and/or labor staffing by leasing "guest worker employees" to other landscapers for their use.  MJC was the employer of

_____

[1] Appellant's complaint alleged professional negligence, negligence, *respondeat superior*, breach of contract, and violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL).

guest workers present in this country on temporary work visas and MJC was responsible for those guest workers in accordance with applicable labor laws. On January 10, 2008, [Appellant], Joseph P. Hemphill and Michael R. Hemphill, individually, and as [] officers, shareholders and partners of MJC Company Lawnworks, Inc., MJC Labor Solutions, LLC and MJC Company, d/b/a The Lawnworks Company, a partnership, entered into a consent judgment in the Eastern District of Pennsylvania, United States District Court at docket number 07-5495, with the Secretary of Labor, to pay for overtime compensation to certain current and former employees of MJC to settle Department of Labor litigation in which they were named [d]efendants. MJC was a defendant in the Department of Labor litigation and also in a class action lawsuit that alleged that they failed to properly pay the guest workers. The class action lawsuit and the Department of Labor litigation resulted in a judgment and/or settlement of over $115,000.00.

In the aftermath of both above-described litigation matters, [six] lawsuits were filed against former clients of the MJC entities for contribution to the judgment and settlement[.]

\* \* \*

MJC and [Appellant] retained a number of attorneys over a period of approximately six years to represent them in these six (6) matters. The instant lawsuit [arose] from the alleged deficiencies in [Siegel & Gallagher's] legal representation in these six (6) underlying suits.

Trial Court Opinion, 6/2/2015, at 4-6 (footnotes and record citations omitted).

Procedurally, this case progressed as follows:

[Appellant,] on May 11, 2012, filed a five-count [c]omplaint [as set forth above] containing one hundred and nineteen (119) averments against [Siegel & Gallagher].

\* \* \*

- 2 -

Preliminary [o]bjections filed by [Siegel & Gallagher] were overruled on February 21, 2013. [Siegel & Gallagher] filed an [a]nswer with [n]ew [m]atter on April 23, 2013 which raised many defenses, including, *inter alia*, lack of causation for any alleged damages and a lack of standing by [Appellant] "to pursue recovery for any purported damages related to underlying matters for which he was not a named party."

The case was assigned to [Judge Christine Fizzano Cannon] on June 10, 2013. Trial was initially set for [the trial court's] November 12, 2013 term. Continuances sought by both counsel resulted in postponements to January 2014, September 2014 and, finally, the January 5, 2015 to January 30, 2015 trial term. No additional continuance was granted. On December 17, 2014, [Siegel & Gallagher] filed a [m]otion for [s]ummary [j]udgment and supporting [m]emorandum of [l]aw. The [m]otion for [s]ummary [j]udgment was supported by sixteen (16) exhibits, which included a copy of the [c]omplaint, the retainer agreement, portions of the deposition of [Appellant], copies of dockets, court orders, correspondence, bankruptcy records relating to an underlying proceeding and unanswered discovery requests propounded during this litigation. [Appellant's] response to the [m]otion for [s]ummary [j]udgment was due on January 16, 2015, however, on that date, [Appellant] requested additional time to file a response. [Appellant's] [o]pposition to [Siegel & Gallagher's] [m]otion for [s]ummary [j]udgment was filed on January 26, 2015 (after the late response was permitted by [the trial court]). The relevant pleadings were closed, discovery was completed, and the date had passed for the submission of expert reports [(which had been set for four weeks prior to trial)]. [Appellant's] response did not include any exhibits or any supplementation to the record. [Siegel & Gallagher] filed a [r]eply to [Appellant's] [a]nswer to the [m]otion for [s]ummary [j]udgment on February 2, 2015. The argument on the [m]otion for [s]ummary [j]udgment, originally scheduled for January 26, 2015, was postponed to February 9, 2015. An [o]rder was entered, after argument and review of the entire record, on February 17, 2015, granting [Siegel & Gallagher's] [m]otion for [s]ummary [j]udgment. Upon examination of the record, [the trial court] did not find

that [Appellant] could establish a cause of action in his five-count complaint[.]

*Id.* at 1-3 (original footnote incorporated; emphasis omitted). This timely appeal resulted.[2]

On appeal, Appellant presents one issue for our review:

Did the [t]rial [c]ourt err in granting the motion for summary judgment submitted by [Siegel & Gallagher]?

Appellant's Brief at 4.

Appellant argues that the trial court erred in granting Siegel & Gallagher's motion for summary judgment. Initially, Appellant contends the trial court "improperly and artificially reduced the scope" of his negligence claims to "the six specific litigation matters described in detail in the [c]omplaint[.]" *Id.* at 8. He claims the complaint alleges "broader negligence than the [] six matters" including, *inter alia*, "[f]ailing to take other actions necessary for the prosecution of [Appellant's] cases[,]" because Siegel & Gallagher were retained for "**all** collection matters, civil litigation, landlord-tenant disputes, contract review, criminal litigation, business law, and insurance matters." *Id.* (emphasis in original). Appellant avers Siegel & Gallagher have repeatedly admitted their negligence. *Id.* at 9. Appellant maintains there is no factual issue that his "damages include

_____

[2] Appellant filed a notice of appeal on March 12, 2015. On March 16, 2015, the trial court filed an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied on April 6, 2015. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 2, 2015.

both lost opportunity for judgments and lost legal fees, and that a jury is required to calculate them." *Id.*

Appellant further contends the trial court erred in concluding he does not have standing in his individual capacity to act on behalf of MJC, because:

> One thing is clear: [Appellant], the President of MJC, Inc., paid the legal fee for the earlier attorneys, and paid more than $40,000[.00] to [Siegel & Gallagher]. [Siegel & Gallagher] offered nothing in the record to contest this unambiguous fact. If [Appellant] has no standing, no one does. [T]his is a question for a jury, not for legal argument pre-trial.

*Id.* at 11.

Further, Appellant argues that expert testimony was not required because the matters at issue are not beyond the scope of layperson experience. More specifically, Appellant posits:

> It simply does not take expert evaluation to determine whether a failure to appear at an arbitration, which directly resulted in the dismissal of a claim, was professional negligence. It does not take an expert evaluation to determine whether a failure to file **any** opposition or response to a motion, which directly resulted in the dismissal of a claim, was professional negligence. Consequently, no expert is required. Nor does it take an expert evaluation to determine [] conduct which [Siegel & Gallagher] have admitted.

*Id.* at 11-12 (emphasis in original).

Finally, Appellant specifically challenges the dismissal of his breach of contract and UTPCPL claims. Appellant alleges, "[t]he trial court erred in *sua sponte* entering judgment on the breach of contract claim on the basis of an arbitration clause[,]" when Siegel & Gallagher "did not raise the arbitration

- 5 -

clause in their [a]nswer and [n]ew [m]atter." *Id.* at 12. Appellant argues the trial court erred in finding the UTPCPL is not applicable to legal malpractice claims. *Id.* at 12-14. Citing federal case law, Appellant asserts an UTPCPL claim challenging attorney debt collection is a viable cause of action and he hired Siegel & Gallagher in this capacity. *Id.* at 13.

When reviewing a grant of summary judgment, the appropriate scope and standard of review are as follows:

> In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.
>
> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Harris v. NGK N. Am., Inc.*, 19 A.3d 1053, 1063 (Pa. Super. 2011) (citation omitted).

The trial court first determined that Appellant could not prove causation or actual loss on his claims for professional negligence, negligence, and *respondeat superior* because he failed to provide any expert testimony to support these allegations. The trial court initially examined whether the alleged breaches of duty involved complex legal issues requiring expert evidence. Trial Court Opinion, 6/2/2015, at 9-17. More specifically, the trial court thoroughly examined each of the six underlying legal actions, as alleged in the complaint, wherein Siegel & Gallagher represented Appellant. *Id.* at 11-17. The trial court highlighted the intricacies of Siegel & Gallagher's representation, noting that Appellant retained Siegel & Gallagher at various stages of litigation in each of the underlying cases and often there were other attorneys representing Appellant before and/or after them. *Id.* Thus, the trial court opined that expert testimony was necessary to untangle the procedural intricacies of the parties' attorney-client relationship, including identifying the moment when the attorney-client relationship came into existence and when it ceased in each of the six underlying cases. Regarding Appellant's contention that Siegel & Gallagher failed to appear at an arbitration hearing, the trial court noted there were "issues concerning judgment priority, collectability, and bankruptcy" which were "not within the purview of a lay person and expert testimony is needed to establish causation of actual harm to [Appellant] as a result of that failure to appear." *Id.* at 13-14. At the time of summary judgment, one of the underlying cases was still an open matter and the trial court opined, "[a]ssuming

*arguendo*, that damages are not deemed completely speculative, it would certainly take an expert to explain the how [Siegel & Gallagher's] actions caused any harm to [Appellant] when [Appellant] could still succeed on the merits." *Id.* at 15. In another matter, Joseph Hemphill, Appellant's partner, failed to show for a deposition, a motion for sanctions was issued and unaddressed, and the case was dismissed. The trial court determined, "expert testimony is required to aid a jury in determining whether the cause of the dismissal was the refusal of Joseph Hemphill to cooperate or the failure to file a response to the motion for sanctions." *Id.* at 16.

With regard to Appellant's breach of contract claim, the trial court first noted that there was "a provision in the fee agreement that any fee disputes go to binding arbitration." *Id.* at 21. However, the trial court also recognized that, "[o]ddly, the breach of contract claim only related to" one of the underlying lawsuits at issue. *Id.* The trial court concluded that "[t]he record is clear that the appeal [in that matter] was dismissed because no post-trial motions were filed by the attorney who represented MJC prior to [Siegel & Gallagher]." *Id.* at 24.

Finally, the trial court found that the UTPCPL does not apply to actions taken by attorneys while practicing law. The trial court determined "[Appellant] claims that [Siegel & Gallagher] violated the UTPCPL because they did not pursue collection efforts against two third parties." *Id.* at 25. The trial court ultimately found "[t]he UTPCPL is not applicable to an

attorney's conduct in collecting judgments and is not applicable to legal malpractice arising from the practice of law." *Id.*

Upon review of the certified record and applicable law, we conclude Appellant's failure to obtain expert evidence to support his claims was fatal to his causes of action. We begin with an examination of relevant law. Both the trial court and Appellant cite our decision in ***Storm v. Golden***, 538 A.2d 61 (Pa. Super. 1988), a case of first impression in Pennsylvania as to whether expert testimony was necessary or required in a legal malpractice case to establish a breach of duty. Storm commenced an action for professional negligence and breach of contract against her former attorney for his representation in a real estate transaction. In ***Storm***, we determined:

> As a general rule, our Supreme Court has held that expert testimony is necessary to establish negligent practice in any profession. Although such a general statement is not a concrete pronouncement as to any one profession, it exhibits a recognition that when dealing with the higher standards attributed to a professional in any field a layperson's views cannot take priority without guidance as to the acceptable practice in which the professional must operate. The standard of care in a legal malpractice case is whether the attorney has exercised ordinary skill and knowledge related to common professional practice. By its very nature, the specific standard of care attributed to legal practitioners necessitates an expert witness' explanation where a jury sits as the fact finder.
>
> We recognize that if all the primary facts can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as are witnesses possessed of special training, experience or observation, then there is

no need for the testimony of an expert. Expert testimony becomes necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person. The requirement of expert testimony has been applied to physicians, dentists, and architects. We hold the requirement applies equally to legal malpractice claims under the circumstances presented here. We expressly limit our holding to the present circumstances in order to allow flexibility as to when expert evidence is needed. Legal malpractice claims run a wide gamut of circumstances from clear cut claims of a breach of an attorney's duty for allowing the statute of limitations to run against the former client's cause of action to the complex determination required of a claim of breach of duty involving the attorney's choice of trial tactics in which a layperson's judgment obviously requires guidance. Between these two extremes lie a myriad number of legal malpractice actions for which the necessity of expert evidence to establish the attorney's duty and breach thereof will not be readily evident without careful examination of the factual circumstances upon which they arise. Generally, the determination of whether expert evidence is required or not will turn on whether the issue of negligence in the particular case is one which is sufficiently clear so as to be determinable by laypersons or concluded as a matter of law, or whether the alleged breach of duty involves too complex a legal issue so as to warrant explication by expert evidence.

Here, the underlying question of whether legal malpractice occurred revolves around a lawyer's duty and responsibility in connection with representing a client in a real estate transaction. We do not agree with appellant's assertions that the sale of real estate is an elementary and non-technical transaction which requires only simple common sense. At issue is not the simplicity of the transaction but the duty and degree of care of the attorney. Whether an attorney failed to exercise a reasonable degree of care and skill related to common professional practice in handling a real estate transaction is a question of fact outside the normal range of the ordinary experience of laypersons.

As to [Storm's] argument that her contract claim in assumpsit must be treated separately from her negligence

claim in trespass and that expert testimony is not necessary to sustain the burden in a breach of contract action, we [disagree]. Appellant's breach of contract count does not allege that appellee failed to follow specific instructions nor that a breach of a specific provision of the contract occurred. Instead,[] we find [Storm's] assumpsit claim is not a true contract cause of action but sounds in negligence by alleging [her attorney] failed to exercise the appropriate standard of care. Consequently, expert testimony is needed for both claims.

**Storm**, 538 A.2d at 64-65 (record citations, legal citations, quotations, and brackets omitted).

Our Supreme Court provided further clarity in **Merlini ex rel. Merlini v. Gallitzin Water Authority**, 980 A.2d 502 (Pa. 2009), a case decided after the promulgation of Pa.R.C.P. 1042.3[3] that requires the filing of a

_____

[3] Pennsylvania Rule of Civil Procedure 1042.3 provides, in pertinent part:

(a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

   (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

   (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed

*(Footnote Continued Next Page)*

certificate of merit in support of a professional liability claim. The **_Merlini_**

Court examined when a professional malpractice claim requires expert

testimony. It first looked at this Court's decision in **_Varner v. Classic_**

**_Communities Corporation_**, 890 A.2d 1068 (Pa. Super. 2006):

> **_Varner_** dealt with a professional liability claim against an architect who designed a townhouse, which rapidly burnt to the ground, killing the plaintiffs' mother. It was alleged the architect was under a duty to abide by the [applicable building codes] in the construction of the premises, but did not do so, especially with regard to the fire resistant materials provision. The **_Varner_** court originally noted regarding professional liability claims, and the need for a certificate of merit, it is the substance of the complaint rather than its form which controls whether the claim against a professionally licensed defendant sounds in ordinary negligence or professional negligence. Ultimately, **_Varner_** held the cause of action filed against the architect sounded in professional negligence because it dealt directly with professional architectural services in the construction of the townhouse. Additionally, the court found the claims against the architect involved [building code] compliance, which was clearly beyond the realm of common knowledge

_(Footnote Continued)_ _____

> professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa.R.C.P. 1042.3 (notes omitted). Here, Appellant filed a certificate of merit on July 24, 2012 stating that a licensed professional supplied a written statement that Siegel & Gallagher's practice fell outside of acceptable professional standards pursuant to Pa.R.C.P. 1042.3(a)(1). Appellant, however, has changed tactics and currently argues that expert testimony is unnecessary under Pa.R.C.P. 1042.3(a)(3).

and would require further explanation through expert testimony.

*Merlini*, 980 A.2d at 506-507 (citations, quotations, footnotes, and brackets omitted).

The *Merlini* Court then distinguished the facts of that case from those in *Varner*:

> Merlini never alleged appellant fell below a professional engineering standard, or any standard affiliated with consulting engineers; rather, she alleged ordinary negligence and trespass because [the Gallitzin Water Authority] directed the installation of a water line on her property without a right-of-way, easement, or permission. It further alleged [those] actions, while working under appellant's direction, constituted trespass and negligence. The form and substance of Merlini's complaint alleged ordinary negligence. First, Merlini averred [the Gallitzin Water Authority] had a duty to plot out any right-of-way necessary for the new water line or to assure [] no easement or right-of-way was needed. Merlini asserted the right-of-way issue was brought to appellant's attention when it contacted Merlini to request permission to enter her property to locate an underground AT&T line. Appellant then directed or allowed [the contractors] to install the water line without adequate investigation and without obtaining a permit. Merlini claimed appellant's actions amounted to gross negligence and violated a duty to her, due to the utter disregard of her property rights. Finally, Merlini's complaint asserted appellant violated its duty to adequately review state, county, and municipal records relevant to her property rights and the presence of a right-of-way.
>
> The Superior Court determined Merlini's allegation sounded in ordinary negligence. [The Supreme Court] agree[d]. As the Superior Court found, appellant's actions occurred while it performed professional services; however, the issue Merlini raised was not one of professional judgment beyond the scope of common knowledge and experience. Merlini asserted a claim of basic negligent trespass - this is not a

- 13 -

> breach of a duty owed by a professional, but a breach of a duty owed by any third party entering upon the property of another. As the Superior Court acknowledged, expert testimony may be required to clarify the property rights as established through state, county, and municipal records; however, once that factual issue is clarified, whether appellant trespassed will not require further expert elucidation[;] thus, she was not required to file a certificate of merit in conjunction with her complaint.

*Id.* at 507-508.

Here, upon review of Appellant's complaint, all five counts allege that Siegel & Gallagher's representation fell below professional standards. While Appellant argues Siegel & Gallagher's purported failures were within the normal layperson experience, Appellant oversimplifies these issues.[4] As the trial court astutely noted, the procedural morass of multiple attorneys representing Appellant at various stages of litigation required expert testimony. As demonstrated by the trial court's thorough analysis, it was difficult to decipher who was representing Appellant when the alleged breaches of professional duty transpired. This factual phenomenon impacts Appellant's ability to demonstrate liability in this case because, without

_____

[4] Appellant claims, for example, that Siegel & Gallagher admit they never took action to reinstate an appeal, failed to respond to motions, did not prosecute claims, and failed to appear for a scheduled arbitration hearing. *See* Appellant's Brief at 6-7. These contentions, however, actually highlight the need for expert testimony. At issue is whether Appellant had retained Siegel & Gallagher during the relevant periods and whether they had corresponding professional duties. While Siegel & Gallagher may admit they did not take action in these specific instances, it is not clear whether they had been retained at the time. Moreover, prior counsel's dereliction may have foreclosed Siegel & Gallagher from obtaining relief on behalf of Appellant. As such, expert testimony was required to explain duty.

expert testimony, Appellant cannot establish a breach of duty or causation on the part of Siegel & Gallagher.

Moreover, we note that Appellant originally filed a certificate of merit indicating that he obtained a written statement from a licensed professional that Siegel & Gallagher's legal representation fell below professional standards, but then did not produce that statement during discovery. Had Appellant determined that expert testimony was not necessary, he should have filed a certificate of merit to that effect, but he did not. Based upon all of the foregoing, the trial court did not err in granting summary judgment for lack of expert testimony on claims of professional legal malpractice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2016